UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
STASON SUTTON                                                                        CV

                              Plaintiff,
      -against-                                                                        **COMPLAINT**

130-132 WEST 29TH STREET LLC, DIGITAL                          **JURY TRIAL REQUESTED**
ARTS NY, AND SCREEN ENGINE/ASI LLC

                              Defendants.
------------------------------------------------------------x

## COMPLAINT

Plaintiff Stason Sutton (hereafter referred to as "Plaintiff"), by counsel, The Parker Law Group P.C., as and for the Complaint in this action against Defendants 130-132 West 29th Street LLC, Digital Arts NY, and Screen Engine/ASI LLC (together referred to as "Defendants"), hereby alleges as follows:

## NATURE OF THE CLAIMS

1. This lawsuit opposes pervasive, ongoing, and inexcusable disability discrimination by the Defendants. In this action, Plaintiff seeks declaratory, injunctive, and equitable relief, as well as monetary damages, nominal damages, and attorney's fees, costs, and expenses to redress Defendants' unlawful disability discrimination against Plaintiff, in violation of Title III of the Americans with Disabilities Act ("ADA") 42 U.S.C. §§ 12181 *et. seq.* and its implementing regulations; the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York State Executive Law ("Executive Law"); the New York State Civil Rights Law, § 40 *et. seq.*; and the New York City Human Rights Law ("NYCHRL"), Title 8 of the Administrative Code of the City of New York ("Administrative Code"). As explained more fully below, Defendants own, lease,

1

lease to, operate, and control a place of public accommodation that violates the above-mentioned laws. Defendants are vicariously liable for the acts and omissions of their employees and agents for the conduct alleged herein.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this matter pursuant to 42 U.S.C. § 12188, and 28 U.S.C. §§ 1331 and 1343 as this action involves federal questions regarding the deprivation of Plaintiff's rights under the ADA. The Court has supplemental jurisdiction over Plaintiff's related claims arising under the New York State and City laws pursuant to 28 U.S.C. § 1367(a).

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendants' acts of discrimination alleged herein occurred in this district and Defendants' place of public accommodation that is the subject of this action is in this district.

## PARTIES

4. Defendant 130-132 West 29th Street LLC owns the property located at 130 West 29th Street in Kings County, New York (hereinafter referred to as "130 West 29th Street").

5. 130 West 29th Street is a commercial office building with 12 floors and two passenger elevators.

6. At all relevant times, defendant Digital Arts NY leases property located at 130 West 29th Street from the defendant 130-132 West 29th Street LLC.

7.	Digital Arts NY operates a 18,000 square-foot facility containing among other things a 27 seat movie Theater (hereinafter referred to as the "Digital Arts" premises).

8.	Digital Arts NY advertises the availability of its theater as "designed for discerning clientele seeking exceptional image and sound quality in a luxurious environment" with the following details:

# 4K THEATER

- ATMOS & Dolby Vision
- 4K Christie Projector
- 27 Seats
- Private 4,000 Square Foot Penthouse Setting
- 17 Ft (Horizontal) Screen
- Color Correction/Finishing
- DCP Mastering
- Re-Recording Mixing
- 7.1 Mixing
- Playback Formats: DCP (4K, 2K, HD), Blu-Ray, QT Prores, PowerPoint, Computer Display
- Film Screenings, Training Seminars, PR Events

*lounge and bar area in a penthouse space with skylights.*

9. Below is a picture of the Theater:



10. Defendant Screen Engine/ASI LLC provides research-based insights, data and analytics to the media and entertainment industries. Its suite of products and services measure, quantify, analyze, and report on consumers' perceptions of upcoming and released content, emerging technologies, and related marketing communications.

11. Defendant Screen Engine/ASI LLC owns and operates the website previewfreemovies.com.

12. PreviewFreeMovies.com is a service that organizes theatrical movie preview screenings—private, pre-release showings of upcoming films—in New York and other cities.

13. Plaintiff loves going to the movies and at all relevant times was registered to attend movie screenings through PreviewFreeMovies.com. Specifically, Plaintiff

registered himself on the PreviewFreeMovies.com site and began receiving email invitations of screenings scheduled in New York along with RSVP instructions

14. Over the past three years, Plaintiff has attended many movie screenings via the PreviewFreeMovies.com site.

15. At all times relevant to this action, Plaintiff Stason Sutton has been and remains currently a resident of New York, New York.

16. At all times relevant to this action, Plaintiff Stason Sutton has been and remains a wheelchair user. Plaintiff has medical conditions that inhibit walking and restrict body motion range and movement.

17. Via PreviewFreeMovies.com, Plaintiff signed up for and received a ticket to attend the June 3, 2025 showing of the movie "Good Fortune" at 2 PM.

18. Plaintiff's confirmation ticket identified the theater location as: Digital Arts Screening Room at 130 West 29th Street, 12th floor, New York, New York.

19. Upon information and belief, Digital Arts NY and Screen Engine/ASI LLC entered into a contractual agreement to lease the "Digital Arts" premises for the "Good Fortune" movie screening.

20. Upon information and belief, Defendant Screen Engine/ASI LLC never undertakes any conduct to verify or confirm that a movie screening location is wheelchair accessible.

21. On June 3, 2025, Plaintiff arrived at the sidewalk in front of 130 West 29th Street.

22. Plaintiff was very excited to see the "Good Fortune" movie.

23. Plaintiff saw people outside 130 West 29th Street presumably waiting to see the movie as well.

24. Plaintiff also noticed security personnel outside 130 West 29th Street.

25. While in his wheelchair, Plaintiff got on the line for the movie screening.

26. A security person and/or an employee of the Defendants went over to Plaintiff and told Plaintiff that he could not attend the movie screening because the theater was not wheelchair accessible.

27. Plaintiff was told this information in front of the other able-bodied persons waiting in line.

28. Needless to say, Plaintiff felt humiliated and angry.

29. Plaintiff asked to speak with a supervisor and then spoke to someone named "K". This supervisor similarly told plaintiff that there were no wheelchair accessible seats at the theater.

30. Deeply embarrassed in front of a crowd of people, Plaintiff left in amazement that in 2025, he should have to suffer such blatant discrimination.

31. Plaintiff desires to continue attending movie screenings but, for obvious reasons, requires that these movie screenings are held in a wheelchair accessible location/venue.

32. By this action, Plaintiff seeks to make sure that defendants never schedule the screening to occur in a location that is not wheelchair accessible and to compel the defendants to remediate this theater to make it accessible to people with disabilities.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

33. Each of the Defendants is a public accommodation as they own, lease, lease to, control or operate a place of public accommodation, the Digital Arts premises located at 130 West 29th Street, within the meaning of the ADA (42 U.S.C. § 12181 and 28 C.F.R. § 36.104), the NYSHRL (Executive Law § 292(9)) and the NYCHRL (Administrative Code § 8-102(9)).

34. The Digital Arts premises is a place of public accommodation within the meaning of the ADA (42 U.S.C. § 12181 and 28 C.F.R. § 36.104), the NYSHRL (Executive Law § 292(9)) and the NYCHRL (Administrative Code (§ 8-102(9)) as it is a facility operated by a private entity and its operations affect commerce.

35. Numerous architectural barriers exist at the Digital Arts premises that prevent and/or restrict access to Plaintiff, a person with a disability, which include, but are not limited to, architectural barriers at the paths of travel.

36. Upon information and belief, in 2011, defendants spent over $65,000 on renovations/alterations to the Digital Arts premises.

37. Upon information and belief, the theater inside the Digital Arts premises was constructed after 1992.

38. Upon information and belief, the theater inside the Digital Arts premises was constructed and/or renovated after 2012.

39. Upon information and belief, in or around 2020, the passenger elevators inside 130 West 29th Street were modernized.

40. The services, features, elements and spaces of the Digital Arts premises are not readily accessible to, or usable by Plaintiff as required by the Americans with

Disabilities Act Accessibility Guidelines, 28 C.F.R. Part 36, Appendix A, and adopted by the United States Department of Justice in 1991 as the Standards for Accessible Design (hereinafter referred to as the "1991 Standards" or the "1991 ADA") or the revised final regulations implementing Title III of the ADA adopted by the United States Department of Justice in 2010 as the 2010 Standards for Accessible Design (hereinafter referred to as the "2010 Standards" or the "2010 ADA").

41. Because of Defendants' failure to comply with the above-mentioned laws, including but not limited to the 1991 Standards or the 2010 Standards and the Administrative Code, Plaintiff was and has been unable to enjoy safe, equal, and complete access to all of the areas of the Digital Arts premises that are open and available to the public.

42. Defendants' place of public accommodation has not been designed, constructed, or altered in compliance with the 1991 Standards, the 2010 Standards, and/or the Building Code of the City of New York ("BCCNY").

43. Barriers to access that Plaintiff experienced, encountered and/or which deter Plaintiff from patronizing the Digital Arts premises as well as architectural barriers that exist include, but are not limited to, the following:

I. Defendants fail to provide accessible wheelchair spaces, companion seats and/or designated aisle seats at its theater.  See 1991 Standards 4.33; and 2010 Standards 221.1; and BCCNY 1108.2.

II. Defendants fail to provide an accessible route to and from accessible wheelchair spaces, companion seats and/or designated aisle seats at its theater.  See 1991 Standards 4.1.2(2); 2010 Standards 206.2.2; and BCCNY 1104.3.

III. Defendants fail to provide accessible wheelchair spaces, companion seats and/or designated aisle seats that are level with slopes not more than 1:48 (2,0%) and without changes in level at its theater.  See 1991 Standards 4.33; and 2010 Standards 802.1.1; and BCCNY ANSI/A117.1 -2003 802.2.

IV. Defendants fail to provide accessible single wheelchair spaces that are 36 inches wide minimum or two adjacent wheelchair spaces that are each 33 inches wide minimum at its theater. See 1991 Standards 4.33; and 2010 Standards 802.1.2; and BCCNY ANSI/A117.1 -2003 802.3.

V. Defendants fail to provide accessible wheelchair spaces that when entered from the front or rear, are 48 inches deep minimum or wheelchair spaces that when entered only from the side, are 60 inches deep minimum at its theater. See 1991 Standards 4.33; and 2010 Standards 802.1.3; and BCCNY ANSI/A117.1 -2003 802.4.

VI. Defendants fail to provide accessible wheelchair spaces that do not overlap accessible routes at its theater. See 1991 Standards 4.33; and 2010 Standards 802.1.5; and BCCNY ANSI/A117.1 -2003 802.5.

VII. Defendants fail to provide accessible wheelchair spaces that afford the required lines of sight at its theater. See 1991 Standards 4.33; and 2010 Standards 802.2; and BCCNY ANSI/A117.1 -2003 802.9.

VIII. Defendants fail to provide accessible wheelchair spaces that are an integral part of the seating plan at its theater. See 1991 Standards 4.33; and 2010 Standards 221.2.2; and BCCNY 1108.2.3.

IX. Defendants fail to provide accessible wheelchair spaces that are dispersed with seating locations and viewing angles that are substantially equivalent to, or better than, the seating locations available to non-wheelchair users at its theater. See 1991 Standards 4.33; and 2010 Standards 221.2.3; and BCCNY 1108.2.4.

X. Defendants fail to provide that each accessible wheelchair space has at least one required companion seat at its theater. See 1991 Standards 4.33; and 2010 Standards 221.3; and BCCNY 1108.2.5.

XI. Defendants fail to provide companion seats that provide shoulder alignment with the adjacent wheelchair spaces and that the floor surface of the companion seat is at the same elevation as the floor surface for the wheelchair space at its theater. See 1991 Standards 4.33; and 2010 Standards 802.3.1; and BCCNY ANSI/A117.1 -2003 802.7.2.

XII. Defendants fail to provide companion seats that provide equivalent size, comfort, quality and amenities to the seating in the immediate area at its theater. See 1991 Standards 4.33; and 2010 Standards 802.3.2; and BCCNY ANSI/A117.1 -2003 802.7.1.

XIII. Defendants fail to provide that at least 5% of the aisle seats are for wheelchair users and that those seats are located closest to an accessible route at its theater. See 1991 Standards 4.33; and 2010 Standards 221.4; and BCCNY 1108.2.6.

XIV. Defendants fail to provide designated accessible aisle seats that contain a folding or retractable armrests when the immediate area contains armrests at its theater. See 1991 Standards 4.33; and 2010 Standards 802.4.1; and BCCNY ANSI/A117.1 -2003 802.8.1.

XV. Defendants fail to provide a sign or marker that identifies accessible aisle seats at its theater. See 1991 Standards 4.33; and 2010 Standards 802.4.2; and BCCNY ANSI/A117.1 -2003 802.8.2.

44. Upon information and belief, a full inspection of the Digital Arts premises will reveal the existence of other barriers to access.

45. As required by the ADA (remedial civil rights legislation) to properly remedy Defendants' discriminatory violations and avoid piecemeal litigation, Plaintiff requires a full inspection of the Digital Arts premises to catalogue and cure all the areas of non-compliance with the ADA. Notice is therefore given that Plaintiff intends to amend the Complaint to include any violations discovered during an inspection that are not contained in this Complaint.

46. Defendants have denied Plaintiff the opportunity to participate in or benefit from services or accommodations because of disability.

47. Defendants have not complied with their statutory obligation to ensure that their policies, practices, and procedures for persons with disabilities are compliant with the laws. Nor have Defendants made or provided accommodations or modifications for persons with disabilities.

48. Plaintiff has a realistic, credible, and continuing threat of discrimination from the Defendants' non-compliance with the laws prohibiting disability discrimination.

The barriers to access within the Digital Arts premises continue to exist and deter Plaintiff.

49. Plaintiff is also a "tester" for the purposes of asserting basic civil rights and monitoring, ensuring, and determining whether the Digital Arts premises is fully accessible and compliant with the 1991 Standards or the 2010 Standards, and the Administrative Code.

50. Plaintiff intends to patronize the Digital Arts premises several times a year as "tester" to monitor, ensure, and determine whether the Digital Arts premises is fully accessible and compliant with the 1991 Standards or the 2010 Standards, and the Administrative Code.

## FIRST CAUSE OF ACTION
### (VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT)

51. Plaintiff realleges and incorporates by reference all allegations set forth in this Complaint as if fully set forth herein.

52. Plaintiff is substantially limited in the life activity of both walking and body motion range and thus has a disability within the meaning of the ADA. As a direct and proximate result of Plaintiff's disability, Plaintiff uses a wheelchair for mobility and has restricted use of arms and hands.

53. The ADA imposes joint and several liability on both the property owner and lessee of a public accommodation. 28 C.F.R. 36.201(b).

54. Under the ADA, both the property owner and lessee are liable to the Plaintiff, and neither can they escape liability by transferring their obligations to the other by contract (i.e., lease agreement). 28 C.F.R. 36.201(b).

55. Defendants have and continue to subject Plaintiff to disparate treatment by denying Plaintiff full and equal opportunity to use their place of public accommodation all because Plaintiff is a person with a disability. Defendants' policies and practices have and continue to subject Plaintiff to disparate treatment and disparate impact.

56. By failing to comply with the law in effect for decades, Defendants have articulated to people with disabilities such as the Plaintiff that they are not welcome, objectionable, and not desired as patrons of their public accommodation.

57. Defendants have discriminated against the Plaintiff by designing and/or constructing a building, facility and place of public accommodation that is not readily accessible to and usable by the disabled Plaintiff and not fully compliant with the 1991 Standards or the 2010 Standards. See 28 C.F.R. § 36.401(A)(1) and 42 U.S.C. §12183(a)(1).

58. The Digital Arts premises are not fully accessible and fail to provide an integrated and equal setting for people with disabilities, in violation of 42 U.S.C. §12182(b)(1)(A) and 28 C.F.R. § 36.203.

59. Defendants failed to make alterations accessible to the maximum extent feasible in violation of 28 C.F.R. §§ 36.402 and 36.406 and 42 U.S.C. §12183(a)(2).

60. The paths of travel to the altered primary function areas were not made accessible in violation of 28 C.F.R. § 36.403.

61. Defendants failed to make all readily achievable accommodations and modifications to remove barriers to access in violation of 28 C.F.R. § 36.304. It would be readily achievable to make Defendants' place of public accommodation fully accessible.

62. By failing to remove the barriers to access where it is readily achievable to do so, Defendants have discriminated against Plaintiff on the basis of disability in violation of § 302(a) and 302(b)(2)(A)(iv) of the ADA, 42 U.S.C. § 12182(a), (b)(2)(A)(iv), and 28 C.F.R. § 36.304.

63. In the alternative, Defendants have violated the ADA by failing to provide Plaintiff with reasonable alternatives to barrier removal as required by 28 C.F.R. § 36.305.

64. Defendants' failure to remove the barriers to access constitutes a pattern and practice of disability discrimination in violation of 42 U.S.C. § 12181 *et. seq.*, and 28 C.F.R § 36.101 *et. seq.*

65. Defendants have and continue to discriminate against Plaintiff in violation of the ADA by failing to maintain and/or create a wheelchair accessible public accommodation.

**SECOND CAUSE OF ACTION**
**(VIOLATIONS OF THE NEW YORK STATE HUMAN RIGHTS LAW)**

66. Plaintiff realleges and incorporates by reference all allegations set forth in this Complaint as if fully set forth herein.

67. Plaintiff has various medical conditions that separately and together prevents the exercise of normal bodily functions in Plaintiff; in particular, the life activities of both walking and body motion range. Plaintiff therefore has a disability within the meaning of the Executive Law § 296(21).

68. In 2019, the New York State legislature enacted legislation that provides effective immediately that the New York State Human Rights Law shall be "construed liberally for the accomplishment of the remedial purposes thereof, regardless of whether

federal civil rights laws, including those laws with provisions worded comparably to the provisions of this article, have been so construed". See Executive Law § 300 [effective date: August 12, 2019].

69.     By amending the Executive Law § 300 to mirror the text of the New York City Local Civil Rights Restoration Act of 2005 (Local Law 85 of 2005), the New York State legislature confirmed the legislative intent to abolish parallel construction between the New York State Human Rights Law and related Federal anti-discrimination laws.

70.     Defendants have and continue to subject Plaintiff to disparate treatment by denying Plaintiff equal opportunity to use their place of public accommodation all because Plaintiff is a person with a disability.

71.     Defendants discriminated against Plaintiff in violation of NYSHRL (Executive Law § 296(2)), by maintaining and/or creating an inaccessible place of public accommodation.  Each of the Defendants has aided and abetted others in committing disability discrimination.

72.     Defendants have failed to make all readily achievable accommodations and modifications to remove barriers to access in violation of NYSHRL (Executive Law § 296(2)(c)(iii)).

73.     In the alternative, Defendants have failed to provide Plaintiff with reasonable alternatives to barrier removal as required in violation of NYSHRL (Executive Law § 296(2)(c)(iv)).

74.     It would be readily achievable to make Defendants' place of public accommodation fully accessible.

75. It would not impose an undue hardship or undue burden on Defendants to make their place of public accommodation fully accessible.

76. As a direct and proximate result of Defendants' unlawful discrimination in violation of NYSHRL, Plaintiff has suffered, and continues to suffer emotional distress, including, but not limited to, humiliation, embarrassment, stress, and anxiety.

77. Plaintiff has suffered and will continue to suffer damages in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
### (VIOLATIONS OF THE NEW YORK CITY HUMAN RIGHTS LAW)

78. Plaintiff realleges and incorporates by reference all allegations set forth in this Complaint as if fully set forth herein.

79. Plaintiff has various medical conditions that separately and together impairs Plaintiff's bodily systems - in particular, the life activity of both walking and body motion range - and thus Plaintiff has a disability within the meaning of the NYCHRL (Administrative Code § 8-102(16)).

80. Defendants have and continue to subject Plaintiff to disparate treatment and disparate impact by directly and indirectly refusing, withholding, and denying the accommodations, advantages, facilities, and privileges of their place of public accommodation all because of disability in violation of the NYCHRL (Administrative Code § 8-107(4)). Each of the Defendants has aided and abetted others in committing disability discrimination.

81. Defendants have and continue to commit disability discrimination in violation of the Administrative Code (inclusive of § 8-107(4)) because of the violations of the ADA as alleged herein.

82. Defendants have discriminated and continue to discriminate against Plaintiff in violation of the NYCHRL (Administrative Code § 8-107(4)) by designing, creating, and/or maintaining an inaccessible commercial facility/space.

83. Defendants have subjected, and continue to subject, Plaintiff to disparate treatment by directly and indirectly refusing, withholding, and denying the accommodations, advantages, facilities, and privileges of their commercial facility/space all because of disability in violation of the NYCHRL (Administrative Code § 8-107(4)).

84. Defendants' policies and procedures inclusive of the policies of refusing to expend funds to design, create and/or maintain an accessible commercial facility/space is a discriminatory practice in violation of NYCHRL (Administrative Code § 8-107(4)).

85. In violation of the NYCHRL (Administrative Code § 8-107(6)), Defendants have and continue to, aid and abet, incite, compel, or coerce each other in each of the other Defendants' attempts to, and in their acts of directly and indirectly refusing, withholding, and denying the accommodations, advantages, facilities, and privileges of their commercial facility/space and the place of public accommodation therein, all because of disability, as well as other acts in violation of the NYCHRL.

86. Defendants' conduct also violates the NYCHRL, Administrative Code 8-107 (17), which states that "an unlawful discriminatory practice . . . is established . . . [when plaintiff] demonstrates that a policy or practice of a covered entity or a group of policies or practices of a covered entity results in a disparate impact to the detriment of any group protected by the provisions of this chapter."

87. Because Defendants' public accommodation is not readily accessible and usable by people with disabilities, Defendants have demonstrated a policy or practice that has a disproportionately negative impact on people with disabilities (including Plaintiff).

88. Defendants' conduct constitutes an ongoing and continuous violation of the NYCHRL. Unless Defendants are enjoined from further violations, Plaintiff will continue to suffer injuries for which there is no adequate remedy at law. Plaintiff will suffer irreparable harm by being denied the accommodations, advantages, facilities, or privileges of the Defendants' public accommodation.

89. As a direct and proximate result of Defendants' unlawful discrimination in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer emotional distress, including, but not limited to, humiliation, stress, and embarrassment.

90. Upon information and belief, Defendants' long-standing refusal to make their place of public accommodation fully accessible was deliberate, calculated, egregious, and undertaken with reckless disregard to Plaintiff's rights under the NYCHRL.

91. By failing to comply with the law in effect for decades, Defendants have articulated to people with disabilities such as the Plaintiff that they are not welcome, objectionable, and not desired as patrons of their public accommodation.

92. Defendants engaged in discrimination with willful or wanton negligence, and/or recklessness, and/or a conscious disregard of the rights of others and/or conduct so reckless as to amount to such disregard for which Plaintiff is entitled to an award of punitive damages pursuant to NYCHRL (Administrative Code § 8-502).

93. By refusing to make their place of public accommodation accessible, Defendants have unlawfully profited from their discriminatory conduct by collecting revenue from a non-compliant space and pocketing the money that they should have lawfully expended to pay for a fully compliant and accessible space. Defendants' unlawful profits plus interest must be disgorged.

94. Plaintiff has suffered and will continue to suffer damages in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
### (VIOLATIONS OF THE NEW YORK STATE CIVIL RIGHTS LAW)

95. Plaintiff realleges and incorporates by reference all allegations set forth in this Complaint as if fully set forth herein.

96. Defendants discriminated against Plaintiff pursuant to New York State Executive Law.

97. Consequently, Plaintiff is entitled to recover the monetary penalty prescribed by Civil Rights Law §§ 40-c and 40-d for each violation.

98. Notice of this action has been served upon the Attorney General as required by Civil Rights Law § 40-d.

## INJUNCTIVE RELIEF

99. Plaintiff will continue to experience unlawful discrimination because of Defendants' failure to comply with the above-mentioned laws. Therefore, injunctive relief is necessary to order Defendants to alter and modify their place of public accommodation and their operations, policies, practices, and procedures.

100. Injunctive relief is also necessary to make Defendants' facilities readily accessible to and usable by Plaintiff in accordance with the above-mentioned laws.

101. Injunctive relief is further necessary to order Defendants to provide auxiliary aids or services, modification of their policies, and/or provision of alternative methods, in accordance with the ADA, NYSHRL, and the NYCHRL.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter a judgment against the Defendants, jointly and severally, in favor of Plaintiff that contains the following relief:

A. Enter declaratory judgment declaring that Defendants have violated the ADA and its implementing regulations, NYSHRL and NYCHRL and declaring the rights of Plaintiff as to Defendants' place of public accommodation, and Defendants' policies, practices, and procedures;

B. Issue a permanent injunction ordering **Defendants to close and cease all business** until Defendants remove all violations of the ADA, the 1991 Standards or the 2010 Standards, NYSHRL and NYCHRL, including, but not limited to, the violations set forth above;

C. Retain jurisdiction over the Defendants until the Court is satisfied that the Defendants' unlawful practices, acts and omissions no longer exist and will not recur;

D. Award Plaintiff compensatory damages and nominal damages because of Defendants' violations of the NYSHRL and the NYCHRL;

E. Award Plaintiff punitive damages to punish and deter the Defendants for their violations of the NYCHRL;

  F. Award Plaintiff the monetary penalties for each violation of the law pursuant to New York State Civil Rights Law §§ 40-c and 40-d;

  G. Find that Plaintiff is a prevailing party and award reasonable attorney's fees, costs, and expenses pursuant to the NYCHRL, and the ADA; and

  H. For such other and further relief, at law or in equity, to which Plaintiff may be justly entitled.

Dated: July 31, 2025
   New York, New York

          Respectfully submitted,

         **THE PARKER LAW GROUP P.C.**

By: _____
  Glen H. Parker, Esq.
  Attorneys for Plaintiff
  28 Valley Road, Suite 1
  Montclair, New Jersey 07042
  Telephone: (347) 292-9042
  Email: ghp@parkerlawusa.com